JOHNSON, Justice,
dissents and assigns reasons.
|,I would reverse the decision of the Court of Appeal.
In my mind, the Lafayette Fire and Police Civil Service Board and the Lafayette Parish Consolidated Government correctly concluded that Mr. Richard’s actions in involving himself in an unofficial capacity in a drug raid on the Meaux Avenue Apartment, and his association with the residents of that apartment, gave rise to a “reasonable suspicion” that he was a involved in illicit drug activity. I submit that while none of the specific reasons outlined in PPM 123-1 § 14 existed in this case, the reasons set forth in the Lafayette Consolidated Government Policy and Procedure Manual (PPM) 128-1 § 14 PPM 123-1 are not exclusive reasons for “reasonable suspicion.”[1] To conclude other *523 wise would mean that the appointing | ..authority, presented with facts that suggest a criminal violation by an employee, cannot conduct drug testing to determine whether the employee should be disciplined terminated and/or arrested.
In this case, we have John Keith Richard (“Richard”), a 10-year veteran of the Lafayette City Police Department, who also worked as head of security at the Club 410 in Lafayette, Louisiana. The only question before this Court is whether a Municipal Police Department may order a Police Officer to undergo drug testing when it receives reliable information that suggests the employee may be involved with illegal drug activity.
Officer Jason Herpin (“Herpin”), who was a member of the Metro Narcotic Task Force, received information from another officer, Jason Galatas (“Galatas”), who observed an ice chest that contained marijuana in an apartment occupied by Marc Cormier (“Cormier”) and Jason Segal (“Segal”) on Meaux Avenue. Segal and Cormier’s brother, Chad, were civilian employees of Club 410, where Herprin worked an off-duty security detail.
laHerprin relayed the information to the Metro Narcotic Task Force, Sergeant Gabriel Thompson (“Thompson”), Major Brian Baumgardner (“Baumgardner”), Officer Kane Marceaux, and Herpin conducted the raid at the Segal/Cormier Apartment. While en route, Thompson contacted Agent Brent Taylor and asked him to meet them with a K-9 unit. The officers located the Segal/Cormier Apartment and knocked on the door. Taylor ran his dog along the door, with no response. Thompson ordered Marceaux to kick the door in. The officers observed an ice chest near the door; they also saw a plate with marijuana in it. Eventually, bottles of steroids and other drug paraphernalia were seized when the apartment was searched pursuant to a warrant.
While the raid was in progress, Cormier contacted Richard to report that plainclothes policemen, including a K-9 officer, had broken into his apartment. Richard knew that the K-9 officer would be Taylor, and called him to find out the identity of the agents conducting the raid. Richard contacted Baumgardner who informed him about the marijuana investigation in progress at Segal/Cormier’s Meaux Avenue Apartment. Richard informed Baumgar-dener that he received a phone call from Cormier, who was in another apartment across the hallway. Baumgardner instructed Richard to persuade Cormier to return to his own apartment. Then, Richard contacted Cormier and told him to stay put. Richard again called Baumgard-ner and gave him Cormier’s phone number, so he could convince Cormier to surrender.
Police Chief Randy Hundley (“Hund-ley”), as the appointing authority, made the decision to have a “reasonable suspicion” drug test performed on these four *524 police officers. Richard tested positive for Stanozolol, an anabolic steroid, commonly known by the brand name “Winstrol,” and muscle building substance, which is a Schedule III narcotic.
|4I disagree with the majority’s conclusion that Captain Hundley did not establish reasonable suspicion to order the drug test of Officer Richard. Hundley had reliable information concerning the possible steroid use among his officers, combined with Richard’s involvement with individuals who were later arrested for illegal drugs. Based on these factors, he had reasonable suspicion to order the drug screening tests in accordance with the provisions set forth in the general orders of the Lafayette Police Department.
If we are to rid our communities of crime and illegal drug usage, we must hold the men and women who are sworn to protect and serve our communities, to a higher standard. Therefore, I find no justification, excuse or rationale for a positive drug test of a veteran police officer, such as Richard, whether it is a random or nonrandom drug test.
While there was no evidence in the record that would provide proof of possession or distribution of steroids by Richard, LSA-R.S.40:968(C), provides that it is unlawful for any person to knowingly or intentionally possess a controlled dangerous substance classified in Schedule III. Richard’s action during the raid, amounts to obstruction and/or interference, at the very least.

. Section 14 of PPM 123-1 provides for nonrandom drug tests as follows:
14.1 Testing on the basis of reasonable suspicion may be directed for reasons including, but not limited to, those identified below:
a. When a supervisor has reason to suspect that an employee is under the influence of drugs or alcohol due to the employee's physical condition or unusual behavior while working, or other articulable reasons that would lead a prudent supervisor to be concerned about the individual’s safety or the safety of co-workers or the general public.
b. When a supervisor has reasonable suspicion of probable drug or alcohol abuse by an employee or a number of employees based on reliable information such as an unusual amount of accidents, incidents of theft, lost productivity or reports of unusual or unsafe behavior, or other facts that would justify testing specific individuals or groups due to safety concerns.
*523 c. When a supervisor has a reasonable suspicion of possible drug or alcohol abuse based on an employee's excessive absenteeism or a suspicious pattern or trend of absenteeism.
d. When an employee is found in possession of suspected illicit or unauthorized drugs and/or alcohol, drug paraphernalia or when an such items are found in an area controlled or used exclusively or predominately by such employee.
e.When an employee is arrested or convicted for a drug-related offense, is identified as the focus of a criminal investigation into illegal drug possession, use, or trafficking, or when information of illegal drug activities is provided either by reliable or credible sources or by independent corroboration.